## Lantz
v.
## Guarantee Security Life Ins. Co.
*[Cite as 2 AOA 498]*

*Case No. 2537*
*Wayne County, (9th)*
*Decided April 25, 1990*

*R.C. 3905.01*

*James H. Hedden, Attorney at Law, P.O. Box 1008, Columbus, Oh 43216-1008 for Plaintiff*

*J. Douglas Drushall, Attorney at Law, 225 North Market St., P.O. Box 488, Wooster, OH 44691-0488 for Defendant.*

CIRIGLIANO, J.

Appellant, Phyllis Lantz fka Badger (Lantz) appeals from the decision of the trial court granting summary judgment in favor of appellee Guarantee Security Life Insurance Company (GSLIC). We reverse.

### FACTS

Between March, 1985 and December, 1986, on four separate occasions, Lantz gave Donald Coots approximately $66,000 to invest in annuities on her behalf. Coots told Lantz that money invested with him was insured "like in a bank" and that her principal was guaranteed. Lantz never asked and Coots never volunteered the name of the company providing the annuity. In her deposition, Lantz testified that she asked others, including a local banker, about Coots, found no one who was negative toward him and that she trusted Coots. She knew Coots was a licensed insurance agent.

Lantz's trust was misplaced. Coots asserted his Fifth Amendment privilege against self-incrimination so it is unclear as to what happened with the funds but it is undisputed that Coots did not invest any money on behalf of Mrs. Lantz. However, he did provide her documents purporting to be "single premium deferred annuity disclosure" statements.None of these documents contained the name of any company.

Subsequently, Lantz became suspicious and asked Coots to provide her with information about her investments. Finally, in October, 1987, Coots gave Lantz a packet of documents which he claimed represented the four investments. Some of the documents were printed on GSLIC letterhead. Lantz contacted GSLIC and discovered that GSLIC had no record of these investments.

As a result of this incident and several others, Lantz filed a multi-count complaint against multiple parties. Only Count II is before this Court. In Count II of the complaint, Lantz alleged that "Guarantee Security gave Coots apparent or actual authority to act on behalf of Guarantee Security" with respect to Coots' misconduct in handling Lantz's funds as set forth in Count I of the complaint. Count I was a cause of action against Coots for fraud and theft. Counts III and IV related to other causes of action.

In its answer GSLIC stated that Coots was authorized to perform certain services on behalf of GSLIC. The scope of Coots' authority was set forth in Coots' contract with GSLIC:

"We hereby appoint you as our General Agent to solicit, personally and through Sales Representatives, applications for policies of life, health insurance and annuities, to collect the first premiums on such policies and remit same to us immediately, and to make proper delivery of policies issues by us on such applications;***."

GSLIC moved for summary judgment. Lantz responded with a motion in opposition. The trial court granted GSLIC's motion and dismissed Lantz's claim against GSLIC. The trial court set forth its reasons as follows:

"***.

"If plaintiff is to succeed against Guarantee, she must demonstrate that Coots' actions were within his actual or apparent authority from Guarantee. Plaintiff cannot succeed on an argument of actual authority since she had no idea that Coots even was an agent for Guarantee. Her argument of apparent authority also must fail. Coots never held himself out to plaintiff as an agent of Guarantee. She did not know that he represented Guarantee until October 16, 1987. She made her last investment with him on December 29, 1986."

"***."

Mrs. Lantz assigns one error in her appeal from the trial court's dismissal of her claim against GSLIC.

### ASSIGNMENT OF ERROR I

"The court of common pleas erred in granting the motion for summary judgment of defendant-appellee Guarantee Security Life Insurance Company."

Lantz contends that GSLIC is liable as a principal for Coots' unauthorized acts because Coots was a general agent for GSLIC. GSLIC argues that Coots had no actual authority for his acts. GSLIC claims that the doctrine of apparent authority does not apply because, at the time of the investments, Coots never held himself out to Lantz as an agent for any particular company.

Summary judgment was appropriate here only if the trial court properly determined that: 1) no genuine issue of material fact remains to be litigated; 2) GSLIC is entitled to judgment as a matter of law; and 3) viewing the evidence most strongly in favor of Lantz, reasonable minds can come to but one conclusion and that conclusion is adverse to Lantz. *Temple* v. *Wean United, Inc.* (1977), 50 Ohio St. 2d 317, 327.

Actual agency arises from the consensual relationship as established between principal and agent. GSLIC expressly conferred upon Coots the authority to solicit applications for policies of life, health insurance and annuities and to collect the first premiums.

Paul Kiernan, Vice President of Marketing for GSLIC testified that it was within the scope of a general agent's authority to solicit applications for products such as annuities and collect the initial premiums. In fact, Coots had already written four annuity policies for GSLIC in his capacity as a general agent for GSLIC. Kiernan also testified that no special training was given to its agents beyond supplying them with informational packets. Based on the facts before us, we find that a genuine issue of material fact remains to be litigated on the issue of Coots' actual authority. Reasonable minds could not only conclude that Coots did not have actual authority. See *Jim's Car Care Center* v. *West Bay Ins. Agency* (Dec 14, 1989), Cuyahoga App. No. 46311, unreported.

A second issue is whether the doctrine of apparent authority estops GSLIC from denying Coots' authority as an agent. There must be a contract before apparent authority is found. *Cascioli* v. *Central Mut. Ins. Co.* (1983), 4 Ohio St. 3d 179, 181.

"Even where one assuming to act as agent for a party in the making of a contract has no actual authority to so act, such party will be bound by the contract if such party has by his words or conduct, reasonably interpreted, caused the other party to the contract to believe that the one assuming to act as agent had the necessary authority to make the contract." *Miller* v. *Wich Bldg. Co.* (1950), 154 Ohio St. 93, paragraph two of the syllabus.

A contract existed between Lantz and Coots. Lantz gave Coots funds to invest. Coots represented that he had authority to invest and that he would do so. She knew Coots sold annuity products and that he was licensed to sell these products. Coots assured Lantz that her principal was guaranteed and the money was guaranteed as if at a bank. Lantz testified that she invested in a "single premium deferred annuity" which is consistent with the lump sum payment given to Coots and within his authority to accept as the first premium.

Clearly, there was a contract and it is undisputed that Coots was a general agent of GSLIC.

"***.

"The apparent authority of an insurance agent is 'such authority as the insurance company knowingly permits such agent to assume, ***or such authority as a reasonably prudent man, using diligence and discretion, in view of the company's conduct, would naturally suppose the agent to possess ***' (footnote omitted). 3 Couch on Insurance 2d (1984 Rev. Ed.) 618, 619, Section 26:62. '***The power of an agent to bind the insurer is coextensive with his apparent authority. ***[I]n the absence of any knowledge by the insured of any limitation on the agent's authority, the insurer's agent has such power as the insurer has held him out to possess***.'(Footnotes omitted.) 3 Couch, supra, at 619-620. This is true regardless of whether he violates limitations upon his authority, as long as it is not known to the insured that he has exceeded his authority. 3 Couch, supra, at 620-622; and 22A Appleman, Insurance Law and Practice (Rev. 1979) 262, Section 14447.35 'The doctrine by which an insurer is held [liable] for the acts of an agent within the apparent scope of his authority is based on estoppel***. To raise such estoppel it is necessary that the insured ***acted justifiably and in good faith***.' (Footnotes omitted.) 3 Couch, supra, Section 26.63, at 624-625. The doctrine of estoppel applies even where the insured is not aware of the name of the particular insurance company, such as where the selection of the particular insurance company is left to the discretion of the agent. 12A Appleman, Insurance Law and Practice (1981) 168, 173, Section 7230; and, see, Machine Co. v. Insurance Co. (1893), 50 Ohio S. 549, 35 N.E. 1060." "***." *Randall* v. *Alan L. Rankin Ins., Inc.* (1987), 38 Ohio App. 3d 87, 89.

Lantz did not know with whom her funds were to be invested. She did not know that Coots was an agent for GSLIC at the time she gave her money to Coots. In fact, not until ten months after the last time she gave Coots money to invest did she hear the name of GSLIC. It is this fact which GSLIC relies on in disclaiming the applicability of the doctrine of apparent authority. The trial court agreed with GSLIC when it found that no genuine issue of

material fact existed because Lantz did not know that Coots represented GSLIC until October 16, 1987, and she had made her last investment with Coots on December 29, 1986. GSLIC also relies on Lantz's admission that she had sold annuities and that in her capacity as an agent she was required to complete an application which was signed by the investing party and agent and approved by the company.

Lantz contends that her knowledge that Coots was a licensed agent or that she trusted him to invest her funds as he represented is sufficient to survive a motion for summary judgment. Furthermore, Lantz argues that Coots' subsequent representations that her funds were safely invested with GSLIC as evidenced by documentation boasting the GSLIC letterhead present an issue of material fact.

In *Cascioli* v. *Central Mut. Ins. Co.,* at 382, the Ohio Supreme Court would not address whether the principles of apparent authority applied where the plaintiff was unaware of the identity of the principal because to do so under the facts before it would result in the rendering of an advisory opinion. In a footnote the Court stated:

"Application of the principles of apparent authority to the instant factual setting is also suspect because Daniel Cascioli was unaware of the identity of Central Mutual and did not rely upon anything it may have done. As the court of appeals stated, in construing Comment B to Section 159 of 1 Restatement of the Law of Agency 2d, '[o]rdinarily, there can be no apparent authority unless the person dealing with the agent relies upon conduct of the principal causing such third person to believe that the agent is authorized to do the act involved.'"

We are mindful of the caution with which we must proceed in construing the doctrine of apparent authority where a plaintiff is unaware of the identity of the principal. Sufficient evidence of apparent authority must be demonstrated. *Randall* v. *Alan L. Rankin Ins., Inc.* (1987), *supra.* The *Randall* court indicated that indicia of authority would include but not be limited to: 1) a principal's sign indicating the general agency status of the agent; 2) the principal's stationery; 3) a document containing the signature of the agent as an agent for the principal; 4) the agent's and the insured's prior dealings with the principal and 5) printed application forms bearing the principal's name. If indicia of authority such as these were present, summary judgment on behalf of the principal, even when the plaintiff was unaware of the principal's identity, would be inappropriate.

Local agents such as Coots are often licensed as general agents for several companies. It is within the power of the principal to choose its general agents. In fact, GSLIC's contract with its general agents contains an indemnification clause which, Kiernan testified, would require an agent to indemnify GSLIC should the agent act outside the scope of his authority. Under these facts, the reasonableness of Lantz's reliance on Coots' authority as a licensed agent remains a question of fact. A question of fact also remains as to the various indicia of authority which caused Lantz's reliance. Nor can we say, as a matter of law, that the principles of agency are inapplicable solely because Lantz was unaware of the name of Coots' principal whom she believed to be safeguarding her investments.

Accordingly, construing the evidence most strongly in favor of Lantz, we find that summary judgment was inappropriate. We sustain Lantz's assignment of error as to the issues of actual and apparent authority. We reverse the decision of the trial court and remand this case for further proceedings consistent with this opinion.

*Judgment reversed,*
*and cause remanded.*

BAIRD, J, Concurs

QUILLIN, J., Dissents